LAW OFFICES OF MARK J. WERKSMAN
MARK M. HATHAWAY, ESQ. (CA Bar No. 151332,
NY Bar No. 2431682, DC Bar No. 437335)
   888 West Sixth Street, Fourth Floor
   Los Angeles, California  90017
   Telephone: (213) 688-0460
   Facsimile: (213) 624-1942
   E-mail: mhathaway@werksmanlaw.com

Attorneys for Plaintiff
Graham J. Hooper

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRAHAM J. HOOPER, an individual<br><br>    Plaintiff<br>v.<br><br>CHRISTINE R. KELLEY, an individual, and DOES 1-10, inclusive,<br><br>    Defendants. | Case No. SACV 13-165-AG-(JPRx)<br><br>MEMORANDUM IN SUPPORT OF PLAINTIFFS' *EX PARTE* APPLICATION FOR<br>(1) TEMPORARY RESTRAINING ORDER;<br>(2) ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION;<br>(3) ORDER FOR TRANSFER OF INFRINGING DOMAIN NAMES<br><br>Date:  TBD<br>Time:  TBD<br>Place: TBD |

/ / /

/ / /

/ / /

TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.   STATEMENT OF FACTS.. . . . . . . . . . . . . . . . . . . . . . . . 1

II.  PLAINTIFF HAS ESTABLISHED THE FOUR ELEMENTS FOR ISSUANCE OF THE TEMPORARY RESTRAINING ORDER, ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION, AND ORDER FOR TRANSFER OF DOMAIN NAMES... . . . . . . . . . . . . . . . . . . . . . . . . 4

   A.   <u>Likelihood Of Establishing Violation of Individual Cyberpiracy Protections Claim under 15 U.S.C. § 8131</u>. 5

      1.   *Defendants registered numerous domain names that include one or more of Plaintiffs' names*.. . . . 7

      2.   *Defendants likely registered the Domain Names without Plaintiffs' consent*... . . . . . . . . . . 7

      3.   *Defendants likely had the specific intent to profit from Plaintiffs' names by selling the domain name for financial gain*.. . . . . . . . . . . . . . . 7

   B.   <u>Likelihood Of Establishing Violation of Individual Cybersquatting Claim under 15 U.S.C. § 1125</u>. . . . . 9

      1.   *Defendant Kelley registered, uses, and traffics in domain names*. . . . . . . . . . . . . . . . . 11

      2.   *The domain names are identical or confusingly similar to Plaintiff's personal name*. . . . . . 11

      3.   *Defendant Kelley with a bad faith intent to profit from the domain name marks*.. . . . . . . . . . 12

   C.   <u>Likelihood of Irreparable Harm in the Absence of Temporary Relief</u>. . . . . . . . . . . . . . . . . 12

   D.   <u>The Balance of Equities Tips in Plaintiff's Favor</u>.. . 13

   E.   <u>The Issuance of a TRO Benefits the Public's Interest</u>..14

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

<u>TABLE OF AUTHORITIES</u>

FEDERAL CASES

*Abercrombie and Fitch Company v. Moose Creek, Incorporated,* 486 F.3d 629 (9th Cir. 2007). . . . . . . . . . . . . . . . . 13

*Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . 4, 14

*Amoco Production Company v. Village of Gambell, AK,* 480 U.S. 531, 107 S. Ct. 1396, 94 L. Ed. 2d 542 (1987). . . . . . . . . . . 13

*Bronco Wine Company v. United States Department of Treasury,* 997 F. Supp. 1309 (E.D. Cal. 1996). . . . . . . . . . . . . . . . 4

*Cal. Independent Systems Operator Corporation v. Reliant Energy Servs., Incorporated,* 181 F. Supp. 2d 1111 (E.D. Cal. 2001).. 4

*Lockheed Missile and Space Company., Incorporated v. Hughes Aircraft Company,* 887 F. Supp. 1320 (N.D. Cal. 1995). . . . . . 4

*Randazza v. Cox,* 2012 U.S. Dist. LEXIS 178048 (D. Nev. Dec. 14, 2012).. . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Southern District of New York, Bogoni v. Gomez,* 847 F. Supp. 2d 519 (S.D.N.Y. 2012).. . . . . . . . . . . . . . . . . . . . . 8

*Tanner Motor Livery, Limited v. Avis, Incorporated,* 316 F.2d 804 (9th Cir. 1963).. . . . . . . . . . . . . . . . . . . . . . 14

*Verizon Cal. Incorporated v. Navigation Catalyst Sys, Incorporated,* 568 F. Supp. 2d 1088 (N.D. Cal. 2008).. . . . 13

*Winter v. Natural Resources Defense Council, Incorporated,* 555 U.S. 7, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008). . . . . . . 4

**STATUTES**

15 U.S.C. § 1125. . . . . . . . . . . . . . . . . . . . 2, 9, 10, 11

15 U.S.C. § 8131. . . . . . . . . . . . . . . . . . . 2, 5, 6, 7, 8, 14

MEMORANDUM OF POINTS AND AUTHORITIES

INTRODUCTION

This is a blatant case of cyberpiracy and "cyberextortion" where defendant Christine R. Kelley registered domain names that incorporate plaintiff's legal name, Graham Hooper, with the intent to sell the domain names to Plaintiff, extort money from Plaintiff, and hold Plaintiff's online reputation hostage for profit and out of spite.

I.   STATEMENT OF FACTS

Plaintiff Graham J. Hooper (52) and defendant Christine R. Kelley (36) had a personal relationship that ended in or around March 2010.  Mr. Hooper now resides in Sunset Beach, California, and is employed as an executive officer with a private technologies company located in Santa Fe Springs, California, which provides advanced machine tools to North American metal-cutting manufacturers and their global affiliates.

Defendant Christine R. Kelley ("Kelley") lives in Los Angeles, works as a freelance film producer, director, and screen writer, and is the registrant for the following Infringing Domain Names:

&lt;grahamhooper.com&gt;

&lt;graham-hooper.com&gt;

&lt;grahamhooperellison.com&gt;

&lt;grahamhoopersunsetbeach.com&gt;

&lt;graham-hooper-sunset-beach.com&gt;

(hereinafter referred to as "Infringing Domain Names")

/ / /

On April 22, 2012, Ms. Kelley registered the Infringing Domain Name <grahamhooper.com> with the domain name registrar Network Solutions. (Decl. Hooper, Exh 1.) Ms. Kelley then published on a website accessible through <grahamhooper.com> the false claim that Mr. Hooper was a subject of and appeared on the syndicated television show "Cheaters." Ms. Kelley also publically posted private emails and text messages between her and Mr. Hooper from the time of their personal relationship. (Decl. Hooper, Exh 2.) A few days later Ms. Kelley sent an email to Mr. Hooper explaining that she had registered the domain name <grahamhooper.com> and offered to remove the website and not make new postings if Mr. Hooper paid her the sum of $10,000. (Decl. Hooper ¶6.) Believing he had no other options, Mr. Hooper paid the $10,000. (Decl. Hooper, Exh 3.)

After receiving the $10,000, Ms. Kelley did not remove the offending material as promised, but rather continued to maintain her smear campaign against Mr. Hooper. On May 6, 2012, Ms. Kelley registered the additional domain names: <graham-hooper.com>, <grahamhooperellison.com>, <grahamhoopersunsetbeach.com>, <graham-hooper-sunset-beach.com>) and parked these Infringing Domain Names with domain name registrar GoDaddy.com. (Exh 4.)

Mr. Hooper never authorized defendant Kelley to use or register the Infringing Domain Names nor did he ever authorize defendant Kelley to use his legal name, Graham Hooper, in any way, shape, or form. (Decl. Hooper ¶¶ 4,16.)

On May 7, 2012, Mr. Hooper filed for and obtained a civil temporary restraining order ("TRO") in Orange County Superior Court in an attempt to halt further contact from Ms. Kelley. Ms.

2

1  Kelley successfully evaded personal service of the temporary
2  restraining order for a period of over 40 days and the TRO
3  expired. (Decl. Hooper ¶10.)
4      On June 21, 2012, Ms. Kelley wrote to Mr. Hooper, "I can
5  assure you as long as Ms. Motroni [Plaintiff's lawyer] is involved
6  nothing short of a $500,000 investment in my production company
7  will ever take these posts off the web." Since that time,
8  defendant Kelley continued to put up and take down the website
9  <grahamhooper.com> from time-to-time, and continued to attempt to
10 contact and harass Hooper by email and text messages. (Decl.
11 Hooper ¶10.)
12     On January 13, 2013, Ms. Kelley sent another email request
13 for payment of $10,000 in exchange for taking the
14 <grahamhooper.com> website down. (Decl. Hooper ¶13.)
15     In publishing the false claim that Plaintiff appeared on the
16 television show "Cheaters", defendant Kelley makes unauthorized
17 use of trademarks registered to Bobby Goldstein Productions, Inc.
18 and Cheaters II, Ltd., the creators, authors, owners and producers
19 of the television show "Cheaters" and all of its related
20 businesses and marks. (See, Exh 2.) On or about January 18,
21 2012, Bobby Goldstein Productions, Inc. demanded in writing that
22 defendant Kelley immediately take down the offending material from
23 the <grahamhooper.com> website and forever cease and desist from
24 any further use or display of the "Cheaters" trade name or logo,
25 demands which defendant Kelley has refused and failed to comply
26 with. (Decl. Hooper, Exh 5.)
27 / / /
28 / / /

3

II. PLAINTIFF HAS ESTABLISHED THE FOUR ELEMENTS FOR ISSUANCE OF THE TEMPORARY RESTRAINING ORDER, ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION, AND ORDER FOR TRANSFER OF DOMAIN NAMES.

The legal standard for obtaining a temporary restraining order is identical to that for obtaining a preliminary injunction. *Bronco Wine Co. v. United States Dep't of Treasury*, 997 F. Supp. 1309, 1313 (E.D. Cal. 1996); *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995); *Cal. Indep. Sys. Operator Corp. v. Reliant Energy Servs., Inc.*, 181 F. Supp. 2d 1111, 1126 (E.D. Cal. 2001).

Specifically, a preliminary injunction may be issued if a plaintiff establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the plaintiff's favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008). The Ninth Circuit has held that district courts may issue an injunction if the first two elements are met and there are "serious questions going to the merits" and there is "a hardship balance that tips sharply toward the plaintiff." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011).

As set forth below, there is no question that Mr. Hooper is likely to prevail on the merits of his cyberpiracy and cybersquating claims and that he will be irreparably harmed if the Court does not temporarily and preliminarily enjoin defendant's infringing activities.

A. <u>Likelihood Of Establishing Violation of Individual Cyberpiracy Protections Claim under 15 U.S.C. § 8131</u>

Plaintiffs' first cause of action alleges that defendants' registration of the Infringing Domain Names violates the individual cyberpiracy protections afforded by 15 U.S.C. § 8131. Specifically, section 8131 provides that:

> . . . [a]ny person who registers a domain name that consists of the name of another living person, or a name substantially and confusingly similar thereto, without that person's consent, with the specific intent to profit from such name by selling the domain name for financial gain to that person or any third party, shall be liable in a civil action by such person. (15 U.S.C. § 8131(1)(A).)

The statute further provides a very limited exception that requires, among other things, that the person registering the domain name act in good faith:

> A person who in good faith registers a domain name consisting of the name of another living person, or a name substantially and confusingly similar thereto, shall not be liable under this paragraph if such name is used in, affiliated with, or related to a work of authorship protected under Title 17, including a work made for hire as defined in section 101 of Title 17, and if the person registering the domain name is the copyright owner or licensee of the work, the person intends to sell the domain name in conjunction with the lawful exploitation of the work, and such registration is not prohibited by a contract between the

5

registrant and the named person. The exception under this subparagraph shall apply only to a civil action brought under paragraph (1) and shall in no manner limit the protections afforded under the Trademark Act of 1946 (15 U.S.C. 1051 et seq.) or other provision of Federal or State law.  15 U.S.C. § 8131(1)(B).

Finally, the statute empowers the court to "award injunctive relief, including the forfeiture or cancellation of the domain name or the transfer of the domain name to the plaintiff." 15 U.S.C. § 8131(2).

In order to prove that defendants have violated this statute, Plaintiff must establish that defendant (1) registered a domain name that consists of the name of Plaintiff; (2) did so without that person's consent; and (3) had the specific intent to profit from Plaintiff's name by selling the domain name for financial gain. Once Plaintiffs establish these elements, Defendants may attempt to defeat liability by establishing the good faith exception.

For the reasons discussed below, Plaintiff has shown that he will likely succeed in establishing each of the three elements of the personal cyberpiracy protection claim and also that defendant Kelly will be unlikely to establish the good faith exception. Thus, Plaintiff has shown the requisite likelihood of success on the merits.

/ / /
/ / /
/ / /

1. *Defendants registered numerous domain names that include one or more of Plaintiffs' names.*

Plaintiff provides the "Whois Record" for the Infringing Domain Names. (Exh **)  This record lists defendant Christine Kelley as the registrant of the domain names that incorporate Plaintiff's name.  Thus, Plaintiff has established that defendant Kelley has "register[ed] a domain name that consists of the name of another living person . . .." See 15 U.S.C. § 8131(1)(A).

2. *Defendants likely registered the Domain Names without Plaintiffs' consent.*

The second element of this claim requires that Plaintiff establish that defendants registered the Infringing Domain Names without his consent. Plaintiff has a high likelihood of succeeding on this element at trial because defendant Kelley has only used the <grahamhooper.com> domain name to publish unflattering and derogatory information about plaintiff, extorting $10,000 from him, and demanding as much as $500,000 for control of the domain website.  In addition, Mr. Hooper states that he never consented to defendant's registration of the Infringing Domain Names or the use of his person name in any form. (Decl.    )  Thus, Plaintiff has established that he will likely succeed in proving that defendant Kelley registered the Infringing Domain Names without Plaintiff's consent.

3. *Defendants likely had the specific intent to profit from Plaintiffs' names by selling the domain name for financial gain.*

For the final element of this claim Plaintiff must establish that defendant had the "specific intent to profit from such name

7

by selling the domain name for financial gain." 15 U.S.C. § 8131(1)(A).

In this case, defendant Kelley embarked on a campaign of cyberextortion immediately after she registered the domain name <grahamhooper.com> and, in fact, extorted $10,000 from Mr. Hooper. Ms. Kelley demanded payment from Mr. Hooper so that he could control the content of the website, but even after Mr. Hooper paid the $10,000, Ms. Kelly continued to exploit the domain and refused to give control to Mr. Hooper. In fact, after getting paid $10,000, defendant Kelley registered four additional domain names using Plaintiff's name. Later, Ms. Kelley asked for a $500,000 "investment" in her production company and on January 13, 2013, made a request for another $10,000 payment.

Although the Ninth Circuit has not yet interpreted 15 U.S.C. § 8131, in a recent case from the Southern District of New York, *Bogoni v. Gomez,* 847 F. Supp. 2d 519, 523-25 (S.D.N.Y. 2012), that court found the requisite specific intent to profit by selling the domain names because the defendant offered to sell the domain names for $1,000,000 each. 847 F. Supp. 2d at 524-25. The court relied on the fact that the defendant "offered the sites for sale at a price exorbitantly beyond the Domain Names' actual value to anyone other than the plaintiff." Id. at 525. In addition, in a case from the Middle District of Florida, *Salle v. Meadows* No. 6:07-cv-1089-Orl-31DAB, 2007 U.S. Dist. LEXIS 92343, 2007 WL 4463920 (M.D. Fla. Dec. 17, 2007), the defendant argued that he lacked the specific intent to profit by selling the domain name because his only intent in registering the relevant domain name was to recover a debt owed by plaintiff. The court determined that

8

the plaintiff was entitled to summary judgment on his private cyberpiracy claim because "cyber-extortion is not a permissible way to recover a debt." Id.  See also, *Randazza v. Cox*, 2012 U.S. Dist. LEXIS 178048 (D. Nev. Dec. 14, 2012)

Defendant Kelley's actions show her intent to profit by extorting money from plaintiff in exchange for control over the content of the domain website that includes his legal name.  Thus Plaintiff will likely succeed in establishing that defendant Kelley had the requisite specific intent to profit.

    B.    <u>Likelihood Of Establishing Violation of Individual Cybersquatting Claim under 15 U.S.C. § 1125</u>

Plaintiffs' second cause of action alleges that defendant Kelley's registration of the Infringing Domain Names violates the right of individual afforded in the Anticybersquatting Consumer Protection Act ("ACPA") as enumerated in 15 U.S.C. § 1125. Specifically, section 1125(d) "Cyberpiracy prevention" provides in relevant part that:

> (1)(A) A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person-
>
>     (i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
>
>     (ii) registers, traffics in, or uses a domain name that-
>
>         (I) in the case of a mark that is distinctive at

9

the time of registration of the domain name, is identical or confusingly similar to that mark;

The statute further provides factors the court may consider in determining whether a person has a bad faith intent described under subparagraph (A). Those factors include:

(I) the trademark or other intellectual property rights of the person, if any, in the domain name;

(II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

(III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

(IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

. . . .

(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

Finally, the statute empowers the court to "order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark." 15 U.S.C. § 1125(d)(1)(C).

10

In order to prove that defendants have violated this statute, Plaintiff must establish that defendant Kelley (1) registered, uses, or traffics in, a domain name; (2) that is identical or confusingly similar to a distinctive trademark, including Plaintiff's personal name; (3) with a bad faith intent to profit from the mark. 15 U.S.C. § 1125(d).

For the reasons discussed below, Plaintiff has shown that he will likely succeed in establishing each of the three elements of the personal cybersquatting claim. Thus, Plaintiff has shown the requisite likelihood of success on the merits.

1. *Defendant Kelley registered, uses, and traffics in domain names.*

Plaintiff provides the "Whois Record" for the Infringing Domain Names. (Exh **) This record lists defendant Christine Kelley as the registrant of the domain names that incorporate Plaintiff's name. Thus, Plaintiff has established that defendant Kelley has "registers, traffics in, or uses a domain name ..." See 15 U.S.C. § 1125(d)(1)(A)(iii).

2. *The domain names are identical or confusingly similar to Plaintiff's personal name.*

Here, Plaintiff's legal given name is Graham Hooper and two of the Infringing Domain Names are identical to his name, – <grahamhooper.com> and <graham-hooper.com>. The remaining Infringing Domain Names include Plaintiff's first and last names followed by other words, including "Ellison" (Plaintiff's employer) or "Sunset Beach" (Plaintiff's city of residence). Thus, Plaintiff has established that he will likely succeed in proving that the domain names are identical or confusingly similar

11

to a distinctive trademark, including Plaintiff's personal name.

  3. *Defendant Kelley with a bad faith intent to profit from the domain name marks.*

  In this case, defendant Kelley immediately embarked on a campaign of cyberextortion as soon as she registered the domain name <grahamhooper.com> and, in fact, extorted $10,000 from Mr. Hooper. Ms. Kelley demanded payment from Mr. Hooper so that he could control the content of the website, but even after Mr. Hooper paid the $10,000, Ms. Kelly continued to exploit the domain and refused to give control to Mr. Hooper, again showing her bad faith. In fact, after getting paid $10,000, defendant Kelley registered four additional domain names using Plaintiff's name. Later, Ms. Kelley asked for a $500,000 "investment" in her production company and on January 13, 2013, made a request for another $10,000 payment. Finally, defendant Kelley has not made any legitimate noncommercial or fair use of the Infringing Domain Names nor used the Infringing Domain Names in connection with any *bona fide* offering of goods and services.

  Defendant Kelley's actions show her intent to profit by extorting money from plaintiff in exchange for control over the content of the domain website that includes his legal name. Thus Plaintiff will likely succeed in establishing that defendant Kelley acted with the requisite bad faith.

  C. <u>Likelihood of Irreparable Harm in the Absence of Temporary Relief.</u>

  Once a plaintiff in a trademark action has established that it is likely to succeed on the merits, irreparable injury is

12

generally presumed. *Abercrombie & Fitch Co. v. Moose Creek, Inc.*, 486 F.3d 629, 633 (9th Cir. 2007); see also *Verizon Cal. Inc. v. Navigation Catalyst Sys, Inc.*, 568 F. Supp. 2d 1088, 1094 (N.D. Cal. 2008) (presumption applies in causes of action under the ACPA). Here, Plaintiff has established the likelihood of success on the merits and, therefore, carries his burden in establishing that he will likely suffer irreparable harm in the absence of temporary relief. Even without this presumption, defendant Kelley's continued cyber-extortion and smear campaign would irreparably injure Plaintiff's online reputation.

    D.   <u>The Balance of Equities Tips in Plaintiff's Favor.</u>

The balancing aspect of the TRO analysis requires courts to weigh "the competing claims of injury and [] consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Village of Gambell, AK*, 480 U.S. 531, 542, 107 S. Ct. 1396, 94 L. Ed. 2d 542 (1987). In this case, defendant Kelley will suffer only minimal harm as a result of the TRO. Although the issuance of a TRO will require defendants Kelly to cease using Plaintiff's personal name, defendant Kelley will remain free to register additional domain names that do not incorporate Plaintiff's name. Additionally, four of the Infringing Domain Names currently serve as domain name "park pages" that contain no apparent content of accessible websites so that very little of defendant Kelley's content would actually become inaccessible upon the issuance of the requested TRO. On the other hand, if the TRO were not issued, Plaintiff would suffer significant injury. Without the TRO, defendant Kelley could

13

relocate the Infringing Domain Names beyond the jurisdictional reach of the Court in order to continue her alleged bad acts. Without the TRO defendant Kelley could continue to tarnish Plaintiff's name in an attempt to force Plaintiff to purchase the Infringing Domain Names.

Finally, consistent with the underlying purpose of TROs, issuance of this TRO will maintain the status quo. "[T]he status quo is the last uncontested status which preceded the pending controversy." *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963). Pursuant to 15 U.S.C. § 8131(2), "a court may award injunctive relief, including the forfeiture or cancellation of the domain name or the transfer of the domain name to the plaintiff." By returning the allegedly infringing domain names to the Registrar, and allowing Plaintiffs to control the Infringing Domain Names during the pendency of this litigation, this injunctive relief will return the parties to the respective positions that they held before defendant Kelley began using the Infringing Domain Names. For these reasons, the Court should find that the balance of equities tips in favor of Plaintiff.

E.   The Issuance of a TRO Benefits the Public's Interest.

"The public interest analysis for the issuance of [injunctive relief] requires [district courts] to consider whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1138 (9th Cir. 2011) (citation omitted). In this case, there is no such public interest that would be injured by the issuance of the requested injunctive relief.

14

CONCLUSION

Pursuant to L.R. 7-19, the name, address, telephone number and e-mail address of the opposing party is as follows:

    Christine R. Kelley [*In Propria Persona*]

    1855 S Beverly Glen Blvd

    Los Angeles, CA  90025

    Telephone:  (213) 268-3368

    E-mail: ckelley6@mac.com

Plaintiff's counsel has complied with the notice requirements set forth in L.R. 7-19.1  A proposed order has been lodged with the Application.

Mr. Hooper rights in his legal name, and the public's right to be free of deception, cannot be protected adequately without immediate injunctive relief.  Therefore, Plaintiff respectfully requests that this *ex parte* application be granted.

LAW OFFICES OF MARK J. WERKSMAN

Dated: January 30, 2013

_____
Mark M. Hathaway
Attorney for Plaintiff
GRAHAM J. HOOPER